## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

MARK PREMAN,

        Plaintiff,

v.                                   Case No:   6:16-cv-443-Orl-41GJK

POLLO OPERATIONS, INC.,

        Defendant.

_____

# REPORT AND RECOMMENDATION

This cause came on for consideration without oral argument on the following motion:

| | |
|---|---|
| **MOTION:** | **PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF REVISED CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS (Doc. No. 57)** |
| **FILED:** | **November 15, 2017** |

**THEREON** it is **RECOMMENDED** that the motion be **GRANTED IN PART** and **DENIED IN PART**.

## I.    FACTUAL BACKGROUND

### A. The Class Action Complaint

The matter before the Court is a proposed class action settlement under the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*. ("TCPA"). Doc. No. 57. Unless stated otherwise, the following facts are taken from Plaintiff's class action complaint (the "Complaint"). Doc. No. 1. Defendant operated Pollo Tropical, a Caribbean-themed restaurant chain with locations in Florida, Texas, Georgia, and Tennessee. *Id*. at ¶ 10. Defendant engaged in a marketing campaign

which involved sending Pollo Tropical coupons via text message to consumers' cellular phones. *Id.* at ¶ 12. Defendant used an automatic telephone dialing system to send the coupons. *Id.* Defendant obtained consent from cellular phone subscribers ("Initial Owners") before sending such coupons. Doc. No. 58-1 at 3. After an Initial Owner ended their cellular phone subscription, the Initial Owner's phone number was sometimes reassigned ("Recycled Numbers") to a new owner. *Id.* Some of these new owners ("New Owners") would receive text message coupons from Pollo Tropical. *Id.* Defendant did not obtain written consent from any of the New Owners to send text message coupons to them. Doc. No. 1 at ¶ 12.

Plaintiff, a New Owner, received fifteen to twenty text message coupons from Pollo Tropical between January 2015 and February 2016. Doc. No. 1 at ¶ 18. Plaintiff did not provide express consent to receive these text message coupons. *Id.* at ¶ 22. On March 17, 2016, Plaintiff, on behalf of the New Owners, filed the Complaint asserting two causes of action under TCPA. *Id.* at ¶¶ 35-46. Count I alleges negligent violation of TCPA, and Count II alleges knowing and/or willful violation of TCPA. *Id.*

### B. The Settlement

On January 30, 2017, the parties filed a status report stating that they reached an agreement on a class-wide settlement following their mediation. Doc. No. 38. On November 15, 2017, Plaintiff filed an unopposed motion (the "Motion") for preliminary approval of the parties' revised class action settlement agreement (the "Agreement") and certification of the Settlement Class.[1] Doc. No. 57. On April 10, 2018, the Motion was referred to the undersigned for a report and recommendation. In the Motion and attached memorandum of law (Doc. No. 58), Plaintiff requests

---

[1] This is Plaintiff's third request for preliminary approval of the Agreement and certification of the Settlement Class. The Court denied Plaintiff's prior two attempts due to the parties' failure to adequately define the Settlement Class. Doc. Nos. 44, 46, 54, 56.

a Court order: 1) scheduling a preliminary settlement approval hearing to determine whether the Agreement should be preliminarily approved and the Settlement Class be certified; 2) certifying, for settlement purposes, the Settlement Class pursuant to Federal Rule of Civil Procedure 23(a), (b)(3), and (e) and granting preliminary approval of the Agreement in accordance with an attached proposed order (the "Proposed Preliminary Order"); 3) approving the notice plan set forth in the Agreement and the form and content of the notice attached thereto (the "Proposed Notice"); 4) approving the Angeion Group as the Settlement Administrator and directing that the Proposed Notice be provided to the Settlement Class; 5) approving and ordering the opt-out and objection procedures set forth in the Agreement; 6) requiring objections, if any, to the Agreement to be submitted no later than forty-five days before the date set for the final settlement approval hearing; 7) appointing Plaintiff as Class Representative; 8) appointing John A. Yanchunis, Sr., and Jonathan B. Cohen as Class Counsel; 9) requiring any application by Class Counsel for attorneys' fees, costs, and expenses to be filed no later than ten business days prior to the final settlement approval hearing; and 10) scheduling a final settlement approval hearing to determine whether the proposed settlement, a motion seeking a service award to the Class Representative, and/or a motion for attorneys' fees, costs, and expenses to Class Counsel should be finally approved. Doc. No. 57 at 1-2; Doc. No. 58 at 26.[2]

In support of the Motion, Plaintiff attaches: 1) the Agreement; 2) the Proposed Notice; 3) declarations from Plaintiff and Mr. Yanchunis; 4) biographies of Plaintiff's counsel detailing their experience in class action litigation; 5) a chart summarizing recent TCPA class action settlements;

---

[2] The parties have requested a hearing regarding approval of the Agreement and certification of the Settlement Class while at the same time requesting that the Court issue an order approving the Proposed Preliminary Order and Proposed Notice. Doc. No. 57 at 1-2; Doc. No. 58 at 26. For the reasons stated below, the undersigned finds no need to hold a hearing at this juncture.

6) declarations detailing the means used to identify the Recycled Numbers and the methods for contacting Settlement Class Members; 7) a list of the Recycled Numbers filed under seal; 8) the Proposed Preliminary Order; and 9) a proposed order of final judgment and dismissal with prejudice (the "Proposed Final Order"). Doc. Nos. 53, 58-1 – 58-12.

### C. The Settlement Terms

#### 1) Parties

The parties to the Agreement are: 1) Plaintiff, on behalf of himself and the Settlement Class; 2) Defendant; and 3) non-party Heartland Commerce Inc. ("Heartland"). Heartland is a party to the Agreement because Defendant engaged Beanstalk Data LLC, Heartland's predecessor in interest, to coordinate the sending of text messages to Pollo Tropical customers. Doc. No. 58 at 3-4.[3]

#### 2) Effective Date and Releases

The Agreement states that it shall not be effective until the Effective Date, which is defined as the later of: 1) the date the Court enters Final Judgment substantially in the form of the Proposed Final Order (Doc. No. 58-2) or in another form agreed to by the parties; or 2) should a Settlement Class Member object to the Agreement, the date on which the period for filing an appeal related thereto has expired or the date on which the settlement and final judgment have been affirmed in all material respects by an appellate court of last resort. Doc. No. 58-1 at 12-13.

Upon the Court's entry of the Proposed Final Order, all Settlement Class Members, including Plaintiff, who do not opt out of the Settlement Class release Defendant and Heartland "from any and all claims … that have been, could have been, or in the future might be asserted

---

[3] Defendant, however, still contends that it received appropriate consent for all text messages sent and did not authorize the sending of any text messages absent such consent. Doc. No. 58 at 4.

that arise out of or relate to Defendant's or [Heartland's] transmission of text messages between March 1, 2012 and March 15, 2017." Doc. No. 58-1 at 14.[4] All Settlement Class Members who do not opt out of the Settlement Class are permanently enjoined from commencing any legal action regarding the above-referenced claims against Defendant, Heartland, or any other released party.[5] *Id.* at 15-16.

### 3) The Settlement Fund

Defendant and Heartland agreed to create a settlement fund of $975,000.00 (the "Settlement Fund") Doc. No. 58-1 at 9. Settlement Class Members who timely file a claim shall be paid a pro rata share of the Settlement Fund, up to $50.00 per phone number.[6] *Id.* at 10. No more than $50.00 per phone number will be given regardless of the number of text message coupons a Settlement Class Member received or the number of Settlement Class Members assigned to a single phone number. *Id.*

Plaintiff shall be paid $5,000.00 from the Settlement Fund as a class representative service award. Doc. No. 58-1 at 12. The Agreement provides for a proposed attorneys' fee of twenty-five percent of the Settlement Fund, which amounts to $243,750.00. *Id.* Class Counsel shall also be reimbursed for costs and expenses not exceeding $5,000.00. *Id.* The proposed service award, attorneys' fees, and cost reimbursement are all subject to the Court's approval. *Id.* Finally, the fees

---

[4] The released parties include Defendant, Heartland, and each of their current and former parents, predecessors in interest, assignors in interest, successors, subsidiaries, affiliates, controlled companies, and each of their officers, directors, shareholders, employees, assigns, agents, vendors, and attorneys. Doc. No. 58-1 at 14-15.

[5] *See supra* p. 5 n. 4.

[6] According to the Agreement and the Proposed Notice, if a Settlement Class Member does not return a completed claim form within sixty days from the date the Proposed Notice is sent (or does not opt-out of the class according to the procedures stated in the Proposed Notice), that member will remain in the Settlement Class and be bound by the judgment and release, but will receive nothing. Doc. No. 58-1 at 11; Doc. No. 58-4 at 3.

and costs of the Angeion Group, the proposed Settlement Administrator, shall be paid out of the

Settlement Fund. *Id.* at 7.

### 4) The Settlement Class

The Settlement Class is defined as:

> All persons who received text messages on behalf of Pollo Operations
> from March 1, 2012 to March 15, 2017 to telephone numbers that had
> been reassigned to them after the original or prior owners of the
> telephone numbers consented to receive such text messages from Pollo
> Operations, who did not consent to receive such text messages, and
> who can be identified through the reverse telephone number look-up
> process utilized by the Settlement Administrator ("**Settlement Class**").
> Excluded from the Settlement Class are: (a) Defendant and its present
> and former officers, directors, employees, shareholders, insurers, and
> their successors, heirs, assigns, and legal representatives; and (b) the
> Court and members of the Court's staff.

Doc. No. 58-1 at 6. Thus, the Settlement Class includes all New Owners who: 1) from March 1,

2012 to March 15, 2017, had a Recycled Number that received a text message coupon from Pollo

Tropical; 2) did not consent to receive such messages; and 3) could be identified through a reverse

telephone number look-up process utilized by the Angeion Group. *Id.* Excluded from the

Settlement Class are: 1) Defendant and its present and former officers, directors, employees,

shareholders, insurers, and their successors, heirs, assigns, and legal representatives; and 2) the

Court and members of the Court's staff. *Id.* The Agreement also states that each New Owner

included in the Settlement Class is a Settlement Class Member.[7] *Id.*

The Agreement also provides information as to how the parties identified the Recycled

Numbers of Settlement Class Members:

> The Recycled Numbers that will be provided to the Settlement
> Administrator, and that have been currently filed with the Court,
> represent the best and preferred method of identifying the
> Settlement Class Members after carefully considering alternatives

---

[7] Plaintiff's memorandum of law states that there are no subclasses contained within the Settlement Class. Doc. No.
58 at 18.

and appropriate expert input. The Recycled Numbers were identified from business records in [Heartland's] possession. Specifically, [Heartland], using its proprietary software, ran a search on its internal system for: (i) each cellular telephone number that received a text message during the class period; and (ii) for which a subsequent text message was sent and a response stating that the number was an "Invalid, Blocked, or Deactivated" number was received by [Heartland]; and (iii) after receiving this notification, a subsequent text message was sent by [Heartland] and ultimately delivered to the cellular phone number. The search generated more than 40,000 cellular phone numbers that fit this criteria.

Doc. No. 58-1 at 7-8. Thus, the parties identified the Recycled Numbers of the New Owners making up the Settlement Class by: 1) collecting each telephone number in Heartland's internal system that received a text from March 1, 2012 through March 15, 2017; 2) finding which of those numbers responded to a subsequent text message with a response stating that the phone number was invalid, blocked, or deactivated (which implies that an Initial Owner cancelled their subscription); and 3) finding which of the previously-stated numbers later received a text message (which implies that an Initial Owner's cellular phone number was reassigned to a New Owner). *Id.* Plaintiff attaches declarations from two consultants with litigation technology experience stating that such method is the best method available to determine the Recycled Numbers of the Settlement Class Members. Doc. Nos. 58-11, 58-12.

Upon the parties' approval, the Angeion Group will use a reverse telephone number look-up process to correspond the list of Recycled Numbers to the addresses of each Settlement Class Member and send the Proposed Notice to those addresses. Doc. No. 58-1 at 9-10. The Agreement permits the Angeion Group to engage in reasonable additional due diligence to identify Settlement Class Members if the reverse telephone number look-up process is unsuccessful. *Id.* at 10. The Angeion Group will also perform other tasks including: 1) mailing the Proposed Notice to Settlement Class Members; 2) assisting the Settlement Class Members in completing claim forms;

3) maintaining a website regarding the settlement; 4) verifying all claims submitted; 5) informing the parties of all persons opting out of the Settlement Class; and 6) providing the parties with a list of accepted and rejected claims and the total to be paid to each claimant.[8] *Id.* at 6-7.

### 5) Notice

The Proposed Notice states the nature of the lawsuit, the details of the Agreement, the names of counsel and the Angeion Group, the reason for receiving the notice, and the date and time of the final settlement approval hearing. Doc. No. 58-4 at 2-3. Within seven days after preliminary approval of the Agreement, the Proposed Notice will be mailed to the identified addresses of the Settlement Class Members.[9] Doc. No. 58-1 at 10. Settlement Class Members will have sixty days to submit their claims to the Settlement Fund, and they must provide their full contact information and verify ownership of a Recycled Number. *Id.*; Doc. No. 58-4 at 2. Each Settlement Class Member submitting a claim must provide their full legal name on the claim form, which cannot match the name of an Initial Owner. Doc. No. 58-1 at 11. Furthermore, each Settlement Class Member submitting a claim must identify the date they obtained ownership of a Recycled Number so that the Angeion Group can confirm that a change in ownership of that phone number occurred after the Initial Owner consented to receive text message coupons from Pollo Tropical. *Id.*

The Proposed Notice also provides procedures for objecting to the settlement or opting out of it. Doc. No. 58-4 at 3. To object to the settlement, a Settlement Class Member must file a written

---

[8] Plaintiff files a declaration of Brian Devery, which describes the Angeion Group's qualifications. Doc. No. 58-10. Mr. Devery's declaration also details the Angeion Group's detailed procedures to locate Settlement Class Members who may have changed addresses since March 1, 2012. For example, Mr. Devery's declaration notes: 1) the Angeion Group's use of the National Change of Address Database, which provides updated addresses of individuals who have moved within the past four years; 2) the re-mailing of returned notices with a forwarding address to that address; and 3) the use of Lexis Nexis to locate the proper addresses for returned notices without a forwarding address. *Id.* at 4-5.

[9] Attached to this report and recommendation is a schedule detailing future deadlines and time periods should the Court determine that the Settlement Class be certified and the Agreement be preliminarily approved.

objection to the Clerk no later than forty-five days prior to the date of the final settlement approval hearing. Doc. No. 58-3 at 5. Copies of any written objections must be served on Class Counsel, Defendant's counsel, and the Angeion Group. Doc. No. 58-4 at 3. Settlement Class Members are not required to attend the final settlement approval hearing for the Court to consider their objection. *Id.* To opt-out of the Agreement, Settlement Class Members must postmark a written request for exclusion within sixty days of the date the Proposed Notice is sent. Doc. No. 58-1 at 10. The written request must be sent to Class Counsel, Defendant's counsel, and the Angeion Group. Doc. No. 58-4 at 3.

## II.     APPLICABLE LAW

Plaintiff seeks preliminary approval of the settlement of this proposed class action. Doc. No. 57. The Agreement contemplates its preliminary approval, certification of a settlement class, the Proposed Notice being sent to the Settlement Class, a period for claims to be submitted by Settlement Class Members, and ultimately, entry of a final order certifying the Settlement Class and approving the Agreement. Doc. No. 57 at 1-2; Doc. No. 58 at 26. "A class may be certified 'solely for purposes of settlement where a settlement is reached before a litigated determination of the class certification issue.'" *Diakos v. HSS Sys., LLC,* 137 F. Supp. 3d 1300, 1306 (S.D. Fla. 2015). "Whether a class is certified for settlement or for trial, the Court must find that the prerequisites for class certification under Rule 23(a) and (b) of the Federal Rules of Civil Procedure are met." *Id.* The Court is mindful that to grant final approval of a settlement class, it must perform a "rigorous analysis" to ensure that the movant meets the Rule 23 requirements before certifying the class. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620, 117 S.Ct. 2231, 2248, 138 L.Ed.2d 689 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems

…. But other specifications of [Rule 23] – those designed to protect absentees by blocking unwarranted or overbroad class definitions – demand undiluted, even heightened, attention in the settlement context.").

Although not explicitly stated in Rule 23, the Eleventh Circuit also requires that the class representative has standing to sue and that the proposed class is adequately defined and clearly ascertainable. *See Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000) ("[P]rior to the certification of a class … the district court must determine that at least one named class representative has Article III standing to raise each class subclaim."). Rule 23(a) is satisfied when the movant shows: 1) the class is so numerous that joinder of all members is impracticable; 2) there are questions of law or fact common to the class; 3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and 4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a).

Should the movant seek certification of a class under Rule 23(b)(3), as is the case here, the movant must satisfy two additional requirements in addition to those provided under Rule 23(a). First, the movant must show that questions of law or fact common to the class members predominate over any questions affecting individual members. Fed. R. Civ. P. 23(b)(3). Second, the movant must show that a class action is superior to other available methods for fairly and efficiently adjudicating the dispute. *Id.*

If a party attempts to certify a class under Rule 23(b)(3), then notice must be provided to all class members. *Miles v. Am. Online, Inc.*, 202 F.R.D. 297, 305 (M.D. Fla. 2001). Federal Rule of Civil Procedure 23(c)(2) requires that the notice be as "best [as] practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *Id.* (citing Fed. R. Civ. P. 23(c)(2)(B)). When reviewing the settlement for

preliminary approval, the Court must review and approve the proposed form of notice to the class. *Family Med. Pharmacy, LLC v. Perfumania Holdings*, No. 15-0563-WS-C, 2016 WL 7320885, at *5 (S.D. Ala. Dec. 14, 2016).

Finally, the Court is required "to make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms." *Fresco v. Auto Data Direct, Inc.* No. 03–61063–CIV, 2007 WL 2330895, at *4 (S.D. Fla. May 14, 2007). When making such a determination, the Court decides whether the proposed settlement "is within the range of possible approval or, in other words, [if] there is probable cause to notify the class of the proposed settlement." *Id.* (citations and quotations omitted). "Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason." *In re Checking Account Overdraft Litig.*, 275 F.R.D. 654, 661 (S.D. Fla. 2011) (citations omitted). After determining the fairness of the settlement terms, the Court must "communicate the proposed settlement to the class, review and approve the proposed form of notice to the class, and … authorize the manner and form of dissemination of the notice." *Family Med. Pharmacy,* 2016 WL 7320885, at *5. Thus, to grant preliminary certification of the Settlement Class and preliminary approval of the Agreement, the Court determines whether the requirements of Rule 23 are met and examines the fairness, reasonableness, and adequacy of the Agreement.

## III.   ANALYSIS

### A.  Class Certification Requirements

#### 1)  Standing

To establish Article III standing, a plaintiff must show that: 1) it suffered an injury in fact; 2) the injury at issue is fairly traceable to the defendant's alleged conduct; and 3) the injury is

likely to be redressed by a favorable judicial decision. *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1547, 194 L.Ed.2d 635 (2016). "To have standing to represent a class, a party must not only satisfy the individual standing prerequisites, but must also 'be part of the class and possess the same interest and suffer the same injury as the class members.'" *Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1307 (11th Cir. 2008) (quoting *Prado–Steiman*, 221 F.3d at 1279.)

Plaintiff alleges that he received text message coupons from Defendant between January 2015 and February 2016. Doc. No. 1 at ¶ 18. Defendant allegedly used an automatic telephone dialing system to send such coupons, and Plaintiff never expressly consented to receive the same. *Id.* at ¶¶ 18, 22. Such allegations demonstrate violations of TCPA. Based on the Complaint's allegations, Plaintiff's injury of receiving text message coupons is fairly traceable to Defendant's alleged use of an automatic telephone dialing system to send those coupons. *Id.* at ¶ 12. Finally, it is likely Plaintiff's alleged injury would be redressed by a favorable judicial decision, as the TCPA provides for statutory damages for violations. *See* 47 U.S.C. § 227(b)(1). Furthermore, the Complaint states that "Plaintiff and Class Members have been injured by Defendant's uniform misconduct – the sending of text messages to cellular telephone numbers for non-emergency purposes using an automatic telephone dialing system without prior express consent." Doc. No. 1 at ¶ 31. Such an allegation establishes that Plaintiff possesses the same interest and suffered the same injury as the putative class. *See Mills,* 511 F.3d at 1307. Accordingly, the undersigned finds that Plaintiff has standing to sue.

### 2)   Adequately Defined and Clearly Ascertainable

Plaintiff must establish that the proposed class is adequately defined and clearly ascertainable. *Carriuolo*, 823 F.3d at 984. "An identifiable class exists if its members can be ascertained by reference to objective criteria." *Riffle v. Convergent Outsourcing, Inc.*, 311 F.R.D.

677, 680 (M.D. Fla. 2015). Such objective criteria should be administratively feasible, meaning "that identifying class members is a manageable process that does not require much, if any, individual inquiry." *Id.* (citations omitted).

Here, the Agreement defines the Settlement Class as including all New Owners who: 1) from March 1, 2012 to March 15, 2017, had a Recycled Number that received a text message coupon from Defendant; 2) did not consent to receive such messages; and 3) could be identified through a reverse telephone number look-up process utilized by the Angeion Group. Doc. No. 58-1 at 6.[10] Furthermore, the Agreement states that the parties obtained the Recycled Numbers of the Settlement Class Members by: 1) collecting each telephone number in Heartland's internal system that received a text from March 1, 2012 through March 15, 2017; 2) finding which of those numbers responded to a subsequent text message with a response stating that the phone number was invalid, blocked, or deactivated; and 3) finding which of the previously-stated numbers later received a text message. *Id.* at 7-8. Plaintiff attaches declarations from two consultants with litigation technology experience stating that the above-referenced method is the best method to objectively verify the Recycled Numbers of Settlement Class Members. Doc. Nos. 58-11, 58-12. Given the foregoing, the undersigned finds that Plaintiff sufficiently explains how the parties identified the Recycled Numbers of Settlement Class Members such that the Settlement Class is adequately defined and clearly ascertainable.

### 3)  Rule 23(a) Requirements

#### a)  Numerosity

Under Rule 23(a)(1), the plaintiff must show that the settlement class is so numerous that joinder is impracticable. *See* Rule 23(a)(1). The Eleventh Circuit has held that the numerosity

---

[10] The Agreement also states that certain persons are excluded from the Settlement Class. *See supra* p. 6.

requirement is "a generally low hurdle" and "less than twenty-one is inadequate [and] more than

forty [is] adequate …" *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1267 (11th Cir. 2009); *Cox v.

Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986). Here, the parties have identified

over 40,000 unique cellular phone numbers that will be used to identify the putative Settlement

Class Members.[11] Doc. No. 58 at 10-11. Thus, the undersigned finds that the Settlement Class

meets the numerosity requirement of Rule 23(a)(1).

### b)   Commonality

Rule 23(a)(2) requires a plaintiff to show that "there are questions of law or fact common

to the class." Fed. R. Civ. P. 23(a)(2). "Commonality requires the plaintiff to demonstrate that the

class members 'have suffered the same injury . . . .'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S.

338, 350, 131 S.Ct. 2541, 2551, 180 L.Ed.2d 374 (2011) (quoting *Gen. Tel. Co. of Sw. v. Falcon*,

457 U.S. 147, 157 (1982)). The claims must depend on a common contention of which "its truth

or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."

*Id.* at 350. The Supreme Court has found that, for the purposes of Rule 23(a)(2), a single common

question of law or fact is sufficient. *Id.* at 359.

The parties have identified common questions of law or fact that satisfy the commonality

requirement. Such common questions include, *inter alia*, whether: 1) Defendant or any third

parties acting on its behalf used an automatic telephone dialing system to send the text message

coupons at issue; 2) Defendant's conduct is subject to the TCPA; 3) Defendant's conduct violated

the TCPA; and 4) Defendant or any third parties acting on its behalf obtained valid prior express

consent from all Settlement Class Members. Doc. No. 58 at 12. Thus, the undersigned finds that

the Settlement Class meets the commonality requirement of Rule 23(a)(2).

---

[11] Plaintiff also filed a list of the Recycled Numbers under seal for the Court's review of the Settlement Class'
numerosity. Doc. No. 53.

### c)   Typicality

Rule 23(a)(3) requires that Plaintiff's claims be typical of the claims of the Settlement Class. Fed. R. Civ. P. 23(a)(3). The Eleventh Circuit has found that the typicality requirement "measures whether a sufficient nexus exists between the claims of the named representative and those of the class at large." *Hines v. Widnall*, 334 F.3d 1253, 1256 (11th Cir. 2003). "A sufficient nexus is established if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory." *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984).

Here, Plaintiff and the Settlement Class Members are all New Owners who allegedly received text message coupons from Defendant due to its alleged use of an automatic telephone dialing system without their consent. Doc. No. 58 at 13. Such allegations establish a sufficient nexus between Plaintiff's claims and those of the Settlement Class. *Hines*, 334 F.3d at 1256. Thus, the undersigned finds that the Settlement Class meets the typicality requirement of Rule 23(a)(3).

### d)   Adequacy of Representation

Rule 23(a)(4) requires that "the representative parties … fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The Supreme Court has stated that the "adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc.,* 521 U.S. at 625 (citations omitted). Thus, the adequacy requirement "encompasses two separate inquiries: 1) whether any substantial conflicts of interest exist between the representatives and the class; and 2) whether the representatives will adequately prosecute the action." *Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003). Regarding adequacy of representation, Rule 23(g)(1)(A) states that the Court must consider the following in determining the appointment of class counsel:

(i) the work counsel has done in identifying or investigating potential claims in the action;
(ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
(iii) counsel's knowledge of the applicable law; and
(iv) the resources that counsel will commit to representing the class
. . . .

The Court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class . . . ." Fed. R. Civ. P. 23(g)(1)(B).

There is no evidence of any conflicts of interest between Plaintiff and the Settlement Class Members. Furthermore, Plaintiff filed a declaration affirming his obligation to protect the Settlement Class Members' interests and stating that he has taken an active role in the case. Doc. No. 58-5 at 3. Plaintiff's counsel is also experienced in class action litigation, including TCPA actions. Doc. No. 58 at 13. Plaintiff filed a declaration from his counsel, Mr. Yanchunis, detailing his extensive experience in class action litigation. Doc. No. 58-6 at 2-3. *See also* Doc. No. 58-7 at 3-7. Accordingly, the undersigned finds that Plaintiff and the Settlement Class meet the adequacy requirement of Rule 23(a)(4).

### 4) Rule 23(b)(3) Requirements

#### a) Predominance

Rule 23(b)(3) requires a finding that "questions of law or fact common to class members predominate over any questions affecting only individual members." The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc.*, 521 U.S. at 623. The court must carefully scrutinize the relationship between common and individual questions in a case. *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045, 194 L.Ed.2d 124 (2016). An individual question requires evidence that is different from one class member to another, but a common question can be resolved by the same evidence for each class member or the issue can be proven by generalized, class-wide proof. *Id.* In reviewing

predominance, the court determines whether the common issues are more prevalent or important than the individual issues. *Id.* If the central issues are common to the class and predominate, then the predominance inquiry is satisfied. *Id.*

Here, the central issue before the Court is whether Defendant violated the TCPA by sending text message coupons to Settlement Class Members without their consent. Doc. No. 1 at ¶¶ 10-27. Determination of that issue would establish whether Defendant is liable under the TCPA, and thus, would directly impact the Settlement Class Members' ability to establish liability or to obtain injunctive and monetary relief. There is no evidence suggesting that individual issues would predominate in this action. Accordingly, the undersigned finds that the Settlement Class has met the predominance requirement of Rule 23(b)(3).

### b) Superiority

Under Rule 23(b)(3), Plaintiff must also show that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b)(3). "The inquiry into whether the class action is the superior method for a particular case focuses on increased efficiency." *Agan v. Katzman & Korr, P.A.*, 222 F.R.D. 692, 700 (S.D. Fla. 2004) (internal quotations and citations omitted). Here, the parties have identified over 40,000 Recycled Numbers that make up the Settlement Class. Doc. No. 58 at 10. Considering the size of the Settlement Class, a class action is far more efficient in resolving this dispute compared to a number of individual cases being filed based on the same set of facts and having similar legal arguments. Furthermore, the parties state that individual lawsuits would lead to burdensome "electronic discovery of no less than eight separate corporations." *Id.* at 17. Finally, the undersigned does not find any likely difficulties in managing this class action. *See* Fed. R. Civ. P. 23(b)(3)(D).

Accordingly, the undersigned finds that the Settlement Class satisfies the superiority requirement of Rule 23(b)(3).

### B.  Adequacy of Notice

After determining that Plaintiff meets the requirements for certifying a class for settlement purposes, attention is turned to the Proposed Notice. Federal Rule of Civil Procedure 23(c)(2) requires that the notice to all class members shall be as "best [as] practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *Miles*, 202 F.R.D. at 305. (citing Fed. R. Civ. P. 23(c)(2)(B)). Rule 23(c)(2)(B) requires that the notice contain the following:

> (i) the nature of the action;
> (ii) the definition of the class certified;
> (iii) the class claims, issues, or defenses;
> (iv) that a class member may enter an appearance through an attorney if the member so desires;
> (v) that the court will exclude from the class any member who requests exclusion;
> (vi) the time and manner for requesting exclusion; and
> (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

When reviewing the settlement for preliminary approval, the Court must "review and approve the proposed form of notice to the class …" *Family Med. Pharmacy,* 2016 WL 7320885, at *5.

The Proposed Notice: states the reason why a Settlement Class Member is receiving the notice; describes the nature of the action along with the claims, issues, and defenses central to this case; defines the Settlement Class; outlines the terms of the Agreement as well as the process for objections to and approval of the same; states that Settlement Class Members are permitted to opt out of the Agreement and outlines deadlines and procedures for opting out; states the consequences for not opting out of the Agreement; requires the Settlement Class Member to name any attorney assisting that member if an objection to the Agreement is filed; provides the contact information

of Class Counsel, Defendant's counsel, and the Angeion Group; and provides the date and time of the final settlement approval hearing.[12] Doc. No. 58-4 at 3.

The Angeion Group will mail the Proposed Notice to the Settlement Class, create and maintain a website devoted to the case, and serve the notification required under the Class Action Fairness Act, 28 U.S.C. § 1715, on the Attorneys General of each state in which any Settlement Class Member resides, the Attorney General of the United States, and other required government officials.[13] Doc. No. 58 at 8. Finally, the Angeion Group has detailed procedures to locate any Settlement Class Members who may have changed their address since March 1, 2012. *See supra* p. 8 n. 8. Considering the foregoing, the undersigned finds that the content and method of the Proposed Notice is compliant under Rule 23 and the requirements of due process, and is the best notice that is practicable under the circumstances.

### C.  Fairness of the Agreement

The Court must also determine whether the Agreement is fair, adequate, and reasonable. *Fresco,* 2007 WL 2330895 at *4. When making such a determination, the Court must consider the following factors:

> (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.

*Bennett v. Behring Corp*., 737 F.2d 982, 986 (11th Cir. 1984).

---

[12] Should a Settlement Class Member desire to file an objection, the Proposed Notice does not require the Settlement Class Member to be represented by counsel in order to file the objection. Doc. No. 58-4 at 3. The Proposed Notice only requires the Settlement Class Member to name all attorneys who assisted in the preparation and filing of the objection, should that member seek legal representation regarding the same. *Id.*

[13] Once the Court sets the date for the final settlement approval hearing, the Proposed Notice will be sent to Settlement Class Members stating the date of that hearing and the deadline for filing objections and opting out of the Agreement.

Regarding the likelihood of success in trial, the parties dispute whether Defendant is liable under TCPA. Doc. No. 58 at 3-4. Plaintiff maintains that he received text message coupons without his consent and that Defendant sent such coupons using an automatic telephone dialing system. Doc. No. 1 at ¶¶ 10-27. Defendant contends that it did not authorize the sending of any text messages without consent. Doc. No. 58 at 4. Defendant also maintains that it has a viable good faith defense because neither Defendant nor Heartland had any way of knowing that prior consent was invalidated due to a certain phone number being recycled to a New Owner. *Id.* Considering these factors, it is not certain that Plaintiff would prevail at trial.

Regarding the second and third factors—the range of possible recovery and the point on or below the range of possible recovery at which the settlement is fair, adequate, and reasonable— the Complaint requests $500 in statutory damages per text message for Count I and $1500 per text message in Count II.[14] Doc. No. 1 at 12. The Agreement states that Settlement Class Members who timely file a claim shall be paid a pro rata share of the Settlement Fund, up to $50.00 per phone number. Doc. No. 58-1 at 10. Thus, the range of possible recovery is zero, should Defendant prevail, to $1,500 per text message. The settlement amount is within such a range. Thus, at this stage of the proceedings, the undersigned finds the settlement amount to be fair, adequate, and reasonable.

Regarding the fourth and sixth factors—the complexity, expense and duration of litigation and the stage of proceedings at which the settlement was achieved—the parties state that the complexities of this case would require sophisticated electronic discovery of at least eight corporations. Doc. No. 58 at 17. Furthermore, Defendant filed a motion to dismiss, which was pending when the parties settled the case. Doc. No. 17. Defendant also stated an intention to

---

[14] As stated previously, Count I alleges negligent violation of TCPA, and Count II alleges knowing and/or willful violation of TCPA. Doc. No. 1 at ¶¶ 35-46.

"vigorously defend this case through trial as needed." Doc. No. 58 at 23. Considering the desire to avoid the complexities and costs of protracted litigation, the parties participated in a mediation before an experienced mediator. *Id.* at 22.

While the parties reached settlement at an early stage of the proceedings, their settlement was the result of "intensive arms-length negotiations between experienced attorneys who are familiar with class action litigation …" Doc. No. 58 at 22. *See also Lipuma v. Am. Express Co.*, 406 F.Supp.2d 1298, 1319 (S.D. Fla. 2005) (approving a class action settlement that was "the result of informed, arms-length negotiations by experienced Class Counsel."). Furthermore, the parties "obtained sufficient information" needed to evaluate the strengths and weaknesses of Plaintiff's arguments. Doc. No. 58 at 22.

Finally, at this stage of the proceedings, there is no evidence regarding the fifth factor of the substance and amount of opposition to the Agreement. Considering the foregoing, along with the strong judicial policy favoring settlement, the undersigned finds the Agreement to be fair, adequate, and reasonable.

### D. The Proposed Preliminary Order

The undersigned has reviewed the Proposed Preliminary Order and finds that it is consistent with the terms of the Agreement and the relief requested except for two discrepancies. First, the memorandum of law contains a request that the Court appoint Plaintiff as Class Representative and John A. Yanchunis, Sr. and Jonathan B. Cohen as Class Counsel, but the Proposed Preliminary Order does not include such appointments. *Cf.* Doc. No. 58 at 26; Doc. No. 58-3.

Second, the Proposed Preliminary Order requires that any "written objections must contain a statement of the reasons for objection, and whether the Settlement Class Member intends to

appear at the Final Settlement Approval Hearing." Doc. No. 58-3 at 5 (emphasis added). The Proposed Preliminary Order requires strict compliance with these directions or else the Settlement Class Member's objection is waived. *Id.* at 5-6. The Proposed Notice, however, does not require a Settlement Class Member to state whether they intend to appear at the final settlement approval hearing. Doc. No. 58-4 at 3. The Proposed Notice only states that attendance at the hearing is not required for an objection to be heard. *Id.*

Given the above-referenced discrepancies, the undersigned finds that the Court should issue an order in the form provided in the Proposed Preliminary Order with the following modifications. First, the Court's order should include an appointment of Plaintiff as Class Representative and an appointment of John A. Yanchunis, Sr., and Jonathan B. Cohen as Class Counsel. Second, the Court should strike the language found in paragraph eight of the Proposed Preliminary Order requiring a Settlement Class Member filing an objection to the Agreement to state whether they intend to appear at the final settlement approval hearing. Doc. No. 58-3 at 5.

## IV.    CONCLUSION

Considering the foregoing, it is **RECOMMENDED** that the Court:

1) **GRANT IN PART** and **DENY IN PART** the Motion (Doc. No. 57); and[15]

2) Issue an order in the form provided in the Proposed Preliminary Order (Doc. No. 58-3) with the following modifications:

   a) The Court's order should include an appointment of Plaintiff as Class Representative and an appointment of John A. Yanchunis, Sr., and Jonathan B. Cohen as Class Counsel; and

---

[15] The undersigned recommends that the Motion be granted in part and denied in part only because the requested hearing is not necessary at this juncture. *See supra* p. 3 n. 2. Thus, the undersigned recommends that the Motion be denied only as to that particular request.

     b)  The Court should strike the language found in paragraph eight of the Proposed Preliminary Order (Doc. No. 58-3 at 5, ¶ 8) requiring a Settlement Class Member filing an objection to the Agreement to state whether they intend to appear at the final settlement approval hearing; and

3)  **DENY** the Motion in all other respects.

<u>**NOTICE TO PARTIES**</u>

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. 11th Cir. R. 3-1. **In order to expedite the final disposition of this matter, if the parties have no objections to this report and recommendation, they may promptly file a joint notice of no objection.**

Recommended in Orlando, Florida on April 12, 2018.

GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy

**PROPOSED SCHEDULE OF FUTURE DEADLINES AND TIME PERIODS FOR
ADMINISTRATION OF THE CLASS ACTION**

| | |
|---|---|
| No later than seven business days after the Court certifies the Settlement Class and preliminarily approves the Agreement | The Angeion Group shall mail the Proposed Notice to all Settlement Class Members. |
| No later than ten business days after the Court certifies the Settlement Class and preliminarily approves the Agreement | The Angeion Group shall post the Proposed Notice on the settlement website. |
| Sixty days after the Proposed Notice is sent to Settlement Class Members | Settlement Class Members are permitted to file claims to the Settlement Fund, opt out of the Agreement, or do nothing but still be bound by any orders and judgments issued by the Court. |
| Forty-Five days before the date set for the Final Settlement Approval Hearing | All objections to the Agreement must be submitted in the manner provided in the Proposed Notice. |
| Ten business days before the date set for the Final Settlement Approval Hearing | Any motion from Class Counsel for attorneys' fees, costs, and expenses shall be submitted. |
| Seven calendar days before the date set for the Final Settlement Approval Hearing | Class Counsel shall serve on Defendant's counsel and file with the Court proof of mailing the Proposed Notice. |
| Three business days before the date set for the Final Settlement Approval Hearing | Any responses in opposition to Class Counsel's motion for attorneys' fees, costs, and expenses shall be filed with the Court. |